**MARGON CORPORATION v. GOLD-BERGER.**

**No. 149.**

Circuit Court of Appeals, Second Circuit.

Jan. 11, 1937.

Morris Kirschstein, of New York City, for defendant-appellant.

James & Franklin, of New York City (Maxwell James, of New York City, of counsel), for plaintiff-appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This is a suit for infringement of claims 1 and 2 of patent No. 1,433,901, granted October 31, 1922, for artificial eyes for dolls, and claims 5, 8, 24, 25, 30, and 31 of a reissue patent No. 18,332, granted January 12, 1922, for doll eyes. The first of these is for a completely assembled eye unit comprising an eye set and a supporting plate therefor, the whole assembly being adapted for mounting into the head of a doll. The eye set comprises a bridge or crossbar carrying a pair of shells; a rod rigidly connected to the middle of a crossbar carries the weight for causing the eyes to rotate to sleeping and waking positions. As a support for the bridge there is provided a plate formed with a pair of parallel slotted ears through which the bridge or crossbar passes for pivotally suspending the latter. To the upper end of the plate is attached a spring having a pair of legs engaging the bridge for yieldingly urging the same forward in the slots, away from the plate. This assembly is adapted to be mounted into a doll head by cementing the upper part of the plate to the inner surface of the head above the eyes.

With this construction, the bridge is supported by the ears and may be moved forwardly by springs and may rotate about the axis of the bridge while suspended in the slots.

Between 1918 and 1925, the practice employed in connection with the assembly of the doll eye units and doll heads was to cut the head open at the top, and then the completely assembled eye unit was lowered into the head through the opening. The eye members were pressed into the sockets and the plate positioned against the inner front surface of the head and then cemented in place by shellac. Then the cut-off portion was replaced at the top of the doll head to close it. In 1926 this old construction was abandoned in favor of a new whereby the eye unit could be inserted through the neck, thus obviating breaking the head.

Claims 1 and 2[1] in suit are drawn to an assemblage comprising doll's eyes, a bridge, a plate supporting the same, and a spring. They do not include the doll's head or the combination of a head and the eye assembly.

Claim 1 includes "a plate supporting said bridge to be fastened to the inner front surface of the doll's head," and claim 2 includes "a plate to be fastened to the inner surface of a doll's head." Claim 1 states that the plate supports the bridge and includes "a plate supporting said bridge," and claim 2 also includes the plate "and means connecting said eyes and pivotally mounted on said plate and supporting the eyes therefrom." Where the top of the head was cut off for the purpose of assembly, the supporting plate, the spring, and the bridge carrying the eyes and supporting it by the plate had all to be assembled in a single unit, so that they could be lowered into the head and, within the single operation of cementing the plate, accomplish the mounting of the unit in the head. The plate member, since on it was supported or suspended the eye axle, provided the support. The claims must be construed to include some means on the plate which actually supports and suspends

the bridge and is capable of supporting the same even when the eye assembly is out of the head.

Appellant is charged to infringe with its two constructions, both adapted for a method of mounting the eye bridge on the doll's head by insertion through the neck instead of cutting open the top of the head. Its earlier and later constructions were two part assemblages and comprised portions built into the head of the doll in the early stages of manufacture and a separate eye set consisting of two eye shells, the bridge and the weight, which is inserted into the head through the neck opening after the two halves of the head are glued together. In its earlier construction, the rail and crossbar are incorporated into the front half of the head before the head parts were glued together. On the rail is a sliding stop member carrying a spring, and this stop member is mounted on the rail before it is assembled in the crossbar. On each lug are perforations, and the slide member is provided with prongs to engage the perforations and thus hold the slide member in its operative position. A spring on the sliding member has a looped portion to contact the square eye axle and thus yieldingly press the eyeballs into the eye sockets. The U-rail, sufficiently resilient, may be contracted to disengage the prongs from the perforations and the sliding member may thus be moved to the rear of the head. The eye may then be freely introduced through the neck of the doll and placed in proper position, with the doll's eyes engaging within the sockets. The sliding stop member is then moved forwardly into operative position, with the spring thereon engaging the midportion of the bridge. In that position, the bridge contacts the looped portion of the spring, but not the stop member. If the doll was subject to a violent knock or the eyes poked rearwardly, the spring is flexed and con-

---

1. A pair of eyes for a doll and the like, a bridge connecting the eyes, a plate supporting said bridge and to be fastened to the inner front surface of the doll's head, and a spring secured on said plate and engaging said bridge in a direction to yieldingly press the eyes against the eyesockets, said bridge being adapted to have a partial rotary movement and also to have movement toward and from the front of the doll's head independently of said plate.

2. A pair of eyes for a doll, a plate to be fastened to the inner surface of the doll's head, means connecting said eyes and pivotally mounted on said plate and supporting the eyes therefrom, and a spring secured on said plate and engaging said supporting means in a direction to yieldingly press the eyes against the eyesockets, said supporting means being adapted to have a partial rotary movement, being pivotally secured, and also to have movement toward and from the front of the doll's head independently of said plate.

tacts the rigid stop and the eye bridge is prevented from falling down into the neck of the head.

In the later construction, the rail is a single bar supported on a crossbar. The stop member is likewise positioned for sliding movement on the rail. The rear end of this stop member is notched to straddle the rail. The front portion of the stop member is inclined and has a slot therein through which the rail passes. Mounted on the front of the stop member is a spring with another spring positioned at the rear of the stop member which contacts the top of the rail. In this form the sliding stop member is first mounted on the rail and the rail and crossbar then mounted in the doll's head before the front and rear halves of the head are glued together. The stop member is so arranged in relation to the rail that an inward force acting at the lower portion of the stop member tends to bind it more tightly to the rail, and a force applied at the top directed downwardly and rearwardly releases the cramping action and the sliding member may then be mounted rearward. In this construction, the slide member positioned rearwardly of the rail, when the head parts are assembled together, the eye set is inserted through the neck, the eyes positioned within the sockets and the sliding stop is moved forwardly until the spring engages the bridge. The bridge contacts the spring but not the stop. The eye sockets are so constructed that, if the eyes are poked rearwardly, the rearward movement of the bridge would be stopped by the stop member, before the eye shells will clear the ledges, thus rendering it impossible for the eye set to fall down into the neck. The bridge is not supported by the stop member. In appellant's construction there are no eyes on the stop member, as it does not support or carry the eye axle. Then, too, the eye axle would lack support were it not for the fact that the eye sockets are so built up that the eye members are supported by the eye sockets. When movement takes place inwardly against the spring on appellant's stop member, the eyeballs do not move in a horizontal plane as in the patent construction constrained by slot ears, but move rearwardly and downwardly along the arcs of the built-up sockets. The top plate is so positioned as to prevent the eyeballs from moving beyond the lowermost edge of the built-up socket, since in that event there would no longer be any support for the eyeballs and the eye axle would drop down into the neck of the doll's head.

The patents of the prior art also make it clear that the appellant does not infringe. The patent to Gerberg, No. 1,290,967, granted January 14, 1919, for articulated eyes, shows a doll's head formed with eye sockets. To the inner surface of the head at the forehead is fixed a spring described as "a thin strip of resilient material." The lower end of this spring privotally supports or carries the eye bridge on which the eyes are mounted. In this patent the spring is shown as tensioned inwardly and obviously presses the eyes into the socket and permits rearward movement against the pressure of the spring as well as rotation of the eyes.

In the patent to St. Germain, No. 1,-276,590, granted August 20, 1918, there is disclosed a floating resilient mounting for an eye bridge. An eye set comprising a pair of eyeballs mounted on an eye axle is supported by a resilient spring formed with bearing ears or lugs in which the eye axle is pivotally mounted. The spring is attached to a bracket or plate which is fixed to the head at the rear of the neck portion. This patent gives a clear disclosure of a floating resilient mounting.

In the patent to Kalvin, No. 1,275,698, for eye mechanism granted August 13, 1918, the eyelids open and rotate and it is the eyelids, therefore, that require resilient support in the eye sockets for the adjustment of irregularities in the head. The mounting consists of a plate which is fastened to the frontal portion of the head by means of pointed screws. On this plate is mounted the eye axle or pivoted rod to which the eye members are connected. The upper eyelids are movably mounted on the eyes, so that, when the eyes and eyelids are assembled on the plate, the upper eyelids perform the opening and closing operation under the action of the weight. A spring is positioned with one and bearing against the upper rear portion of the head and the other end pressing the plate, thereby yieldingly urging the lower lids of the eyes into the sockets of the head, because the action of the spring tends to pivot the plate by the ends of the threaded screws. The only structural difference between this and the patent in suit is that in the patent, the spring being on the plate, the eye axle moves on the plate while the plate remains fixed, and, in Kalvin, the eye axle being fixed to the plate and, the spring being mounted to the rear of and acting on the

338

plate, the eye axle and the plate move together. Only the fact that in Marcus the plate carries the spring and, at the same time, carries the eye axle in extensions on the plate, is this patent distinguished from Kalvin. However, the claims are met by any structure in which the attaching plate carries the eye axle and resiliently supports the eyes in the eye sockets. In Kalvin the attaching plate carries the eye axle, the resilient action being served equally well when the spring acts upon the axle only or upon the plate and axle. That Kalvin causes the eyelids to rotate rather than the eyeballs is immaterial from the viewpoint of the final result sought; namely, opening and closing the eyes for waking and sleeping positions.

In Giebeler Wauke, No. 1,318,472, for eyes for dolls granted October 21, 1919, there is shown an eye set comprising eyeballs slidably and rotatably mounted on a cross-shaft or eye axle. The latter is journaled in a sleeve secured to a U-shaped supporting plate having side portions. This plate is mounted on two studs fixed to the front attaching plate or strip having prongs whereby the same may be secured in the front portion of the head. The attaching plate carries the eye axle. The sleeve or bearing in which the eye axle is journaled is carried on the member supported on studs extending from the attaching plate and on which such member may move under the resilient action of the springs on the studs and the springs.

These patents of the prior art show that the presence of irregularities and variations in doll's heads incidental to materials and methods of manufacture had been recognized and overcome by the use of spring members for providing yielding contact with eye sockets. Also it is shown that it was old to mount an eye axle on a supporting plate which was acted upon by a spring or springs whereby the eye axle is positively supported by the plate, and while themselves being supported to be made to yieldingly engage the eye sockets. The only element present in Marcus not specifically shown in the prior art is the slotted ears or extension on Marcus' supporting plate. This alone would be the only possible distinction between the claims in suit and the prior art. The patentee added nothing to the prior art other than the convenient way and means of mounting the eye set in an assembled unit through an opening cut into the top of the head. But recognizing the necessity of resiliently mounting the eyes in the sockets, and taking the means for that purpose, namely, a supporting plate in a spring directly from the prior art, he so arranged his supporting plate that the eye, axle, plate, and spring could all be assembled together, and yet, when the plate was secured to the head, there would be provision for permitting movement of the eye axle toward and away from the sockets. To accomplish this he provided the plate with slotted ears or extensions in the bottom of which the eye axle could rest and within which the movement of the plate back and forth could be had. Limited by the prior art, claims 1 and 2 are not infringed by the appellant's device, for neither of the appellant's construction has a "plate supporting the bridge and to be fastened to the inner surface of the doll's head," or, as stated in claim 2, "a plate to be fastened to the inner surface of the doll's head" and "means connecting said eyes (the eye axle) and pivotally mounted on said plate and supporting the eyes therefrom; that is, from the plate." It is because the plate which supports the bridge whereby the latter may move forwardly and rearwardly while resting on the plate, that is, the slotted ears, that Marcus has distinguished his invention from the prior art. In Marcus, if the plate is removed, the eye axle is carried along with it because the eye axle is suspended from the plate. In appellant's construction, when the stop member is removed, the eye axle is completely free. Marcus did not invent the yielding spring mounting, for he took that from the prior art. Therefore there is no infringement of this patent.

Marcus Reissue patent, No. 18,332, is for a means of mounting the eyeballs onto the cross shaft of an eye set for rotation thereof, and it provided for an independent and free movement of each eyeball longitudinally to the shaft within definite limits. It is a mounting for a manual rotary adjustment by the shaft and a manual shifting of the eye mounting means longitudinally of the shaft. At any new point of adjustment, the eyeball will have the same degree of free and automatic longitudinal adjustment as it had in its previous position. This patent shows a pair of eye shells mounted on a cross shaft to which a weight is connected. Each eye shell is formed with a rear bridge portion having two ears or flanges bent inwardly into a narrow U-shape, the flanges being perforated for bearing apertures. The bridge portion has

a rectangular opening through which a connector member is inserted and it has a central circular opening with slits leading into the central opening so as to provide a resilient frictional grip for the shaft upon which it is mounted. A space is provided between the connector member and the sides of the opening for defining the limits of the free and automatic movement of the eye shell longitudinal of the shaft. The sides of the connector are in close contact with the upper and lower sides of the rectangular opening, the relationship being such that the eyeball will be caused to rotate with the shaft and the connector member. Through the medium of the frictional grip of the connector member on the shaft, the connector member of the eyeball may be manually adjusted longitudinally or with the shaft in a rotary direction around the shaft. In any new position of adjustment, each eyeball will still have the same amount of free and automatic longitudinal motion along the shaft as it had in its previous position. Thus there are two manual adjustments called for by the patent, one longitudinal, whereby the connector member is shifted along the eye axle; the other is a rotary manual adjustment, whereby the connector member together with the eyeball rotates about the axis.

The appellant's construction has a weight attached to the central portion of the eye axle carrying two square eyelets fixed to the axle to predetermined positions. Each eyelet is formed with a flange at its innermost end. The eyeball used in connection with the shaft has a square opening in the inner portion of the shell adapted to fit the square eyelet and a round bearing aperture in the outer portion which is in rotary connection with the cylindrical cross shaft itself. The ends of the cross shaft are staked to prevent disassembly of the eyeballs or the shaft. The frictional grip between the eyelet and the cross shaft permits the only limited manual rotary adjustment of the eyes upon the shaft, and the distance between the flange and the eyelet and the staked portion at the end of the shaft provides for limited free longitudinal motion of each eyeball. The staked ends of the shaft perform no function in the free movement of the eyeballs. They prevent disassembly of the eyeballs from the shaft in the handling, in manufacture, or in transit. The appellee's eye set can be used in heads of different size while in the appellant's it is impossible with its eye sets.

There is no manual longitudinal adjustment in appellant's structure. The eyelets are of ordinary manufacture made from soft ribbon brass. Only a very limited degree of rotary adjustment along the shaft is possible, and that movement is detrimental to the material and the too great a degree of rotary adjustment results in loosening the eyelet upon the shaft. Forced longitudinal movement of the eyelet accomplishes no useful purpose. To force the eyelet along the eye axle would merely impair appellant's structure and result in a disadvantage rather than an advantage.

The patent to Grubman, No. 1,540,520, shows an adjustable eyeset, but the adjustment in the eyes in the sockets takes place automatically. The eye members are formed with integral rectangular base flanges which are mounted on rectangular frame plates of the weight-carrying member. The frame plates are larger than the flanges and are provided with lugs in the four corners. A spring inserted in the eye yieldingly presses the flange of the eye member against the underneath side of the lugs, thus permitting the eye member to have both free and automatic horizontal motion and free and automatic vertical motion within the limits provided by the lugs. The Konoff patent, No. 1,581,051, discloses a construction in which the eyes are mounted on a rod by means of a member fastened to the rear of each eye shell. This member is provided with an integral projecting tubular sleeve or stem portion adapted to telescope over the end of the rod. It is so designed as to frictionally engage the rod and thus provides for the manual rotary adjustment of the eyeball against the axis of the supporting rod. The eye may be also manually adjusted in a longitudinal direction along the rod due to the frictional engagement of the split sleeve with the rod.

Thus rotation of the eye about the eye axle or shaft is shown to have been accomplished in the prior art either by bending an arm directly attached to the eye shell as in Konoff, No. 1,897,848, or Nemcovsky, No. 1,801,763, or by means of an intermediate friction member as in Konoff, No. 1,580,051. Where the pendulous weight is attached to the axle or eye shaft, the intermediate friction member is used. To substitute the method of bending the connecting arms for a frictional connecting member did not involve invention. This patent is invalid in view of the prior art.

Decree reversed.